1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO JIMENEZ RODRIGUEZ,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL,<br><br>　　　　　Defendant. | Case No.: 19cv805-CAB-KSC<br><br>**ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT [Doc. Nos. 15, 16]** |

Pending before the Court are cross motions for summary judgment. [Doc. Nos. 15 and 16.] For the reasons set forth below, Plaintiff's motion for summary judgment [Doc. No. 15] is **GRANTED**, Defendant's motion for summary judgment [Doc. No. 16] is **DENIED,** and the matter is **REMANDED** to the Social Security Administration for further proceedings.

PROCEDURAL BACKGROUND

Plaintiff appeals the denial of his December 30, 2015 application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the "Act") (Transcript of Certified Administrative Record (AR) 139, 229-32). The Commissioner denied the application initially and on reconsideration (AR 160-64, 167-71). Plaintiff requested a hearing before an administrative law judge (ALJ), and the ALJ heard Plaintiff's case on February 7, 2018 (AR 70). Plaintiff, his

attorney, a medical expert, and a vocational expert appeared, with Plaintiff and experts testifying (AR 70-71). In a March 27, 2018 decision, the ALJ found Plaintiff was not disabled (AR 16-27). On February 27, 2019, the Appeals Council declined further review, and the ALJ's decision became the final of the Commissioner (AR 7-9). Plaintiff seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. section 405(g) and 20 C.F.R. section 404.981.

## ALJ DECISION

The ALJ used the five-step sequential evaluation process to guide the decision. 20 C.F.R. § 416.920. The ALJ found that Plaintiff did not engage in substantial gainful activity since his November 11, 2015 alleged disability onset date. (AR 19.) The ALJ found that Plaintiff has the following severe impairments: blindness in the right eye; loss of central acuity in the left eye; and contraction of the visual field in the left eye. (AR 19.) The ALJ also found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: Plaintiff could not drive; must avoid even moderate exposure to hazards such as moving machinery and unprotected heights; was limited to indoor work; lacked depth perception, so he could not engage in such tasks as holding two small objects, one in each hand, and connecting them or inserting one of them into the other; was limited to close-up work (i.e. work that would be two feet in front of him); and he could not read. (AR 22-23.) Finally, relying on vocational-expert testimony, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy and identified the representative positions of silver wrapper, with 28,000 jobs existing in the national economy (Dictionary of Occupational Titles (DOT) 318.687-018; and garment sorter, with 35, 000 jobs existing in the national economy (DOT 222.687-014 (AR 26-27, 95-96.)

## STANDARD OF REVIEW

Under 42 U.S.C. section 405(g), courts review the ALJ's decision to determine whether substantial evidence supports the ALJ's findings and if they are free of legal

2

error. *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir.1996); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir.1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards). Substantial evidence means " 'more than a mere scintilla,' but less than a preponderance." *Saelee v. Chater*, 94 F.3d 520, 521–22 (9th Cir.1996) (*quoting Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks and citation omitted).

When looking for substantial evidence, courts must review the record as a whole and consider adverse as well as supporting evidence. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir.2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.' " *Robbins*, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.1989)); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir.2007).

A claimant is "disabled" as defined by the Social Security Act if: (1) "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 1382c(a)(3)(A)-(B) (West 2004); *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir.2012).

To determine whether a claimant is disabled, an ALJ engages in a five-step sequential analysis as required under 20 C.F.R. sections 404.1520(a)(4)(i)-(v). Specifically under step five, which is at issue here, a claimant is disabled unless the

Commissioner meets her burden and shows that there exist a significant number of jobs in the national economy that claimant can do. 20 C.F.R. §§ 416.920(a)(4)(v),(g); 416.960(c); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999) (the Commissioner bears the burden of showing the existence of significant jobs). Significant jobs in the "national economy" must exist either "in the region where such individual lives or in several regions in the country." 42 U.S.C. § 423(d)(2)(A). There is no bright-line rule for determining how many jobs are "significant" under step five in the Ninth Circuit, although "a comparison to other cases is instructive." *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir.2012). Moreover, there must be more than a few "scattered", "isolated" or "very rare" jobs available. *Walker v. Mathews*, 546 F.2d 814, 820 (9th Cir.1976); *see also Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir.2014). Finally, even if there are not sufficient jobs in the regional economy, courts must still look to the availability of those jobs across several regions in the national economy. *Gutierrez*, 740 F.3d at 528.

## DISCUSSION

A. DOT and VE Testimony.

At Step Five, the ALJ determines whether the claimant is able to perform any work other than the claimant's past relevant work, considering the claimant's RFC, age, education and work experience. 20 C.F.R. § 416.920(a)(4)(v). Should the ALJ decide that the claimant is not disabled, "the [SSA] is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. § 416.960(c)(2).

Social Security Ruling ("SSR") 00–4p governs the use of occupational evidence. At Step Five of the sequential evaluation, ALJs rely on the DOT and testimony from vocational experts in making disability determinations. SSR 00–4p, 2000 WL 1898704 at *2 (Dec. 4, 2000). The DOT is a reference guide in the form of a job catalog that contains standardized occupational information about each job. An ALJ is to "rely primarily on

the DOT.... for information about the requirements of work in the national economy." *Id*. An ALJ may also call upon a VE to provide occupational evidence through testimony at a disability benefits hearing. *Id*.

The DOT provides specific information about each job, including General Education Development ("GED") and Specific Vocational Preparation ("SVP") scores. The GED score includes a reasoning development level score, which "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT, Appendix C. The scale of reasoning development levels is 1 to 6, with 6 being the most advanced level. DOT, Appendix C. The SVP score refers to " 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.' " *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1230, n.4 (9th Cir. 2009) (*quoting* DOT, Appendix C, p.1009 (4th ed. 1991) ). " 'The DOT lists [an SVP] time for each described occupation. Using the skill level definitions in 20 C.F.R. 404.1568 and 416.968, unskilled work corresponds to an SVP of 1–2; semi-skilled work corresponds to an SVP of 3–4; and skilled work corresponds to an SVP of 5–9 in the DOT.' " *Bray*, 554 F.3d at 1230, n.4 (quoting Policy Interpretation Ruling: Titles II & Xvi: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions, SSR 00-4P (S.S.A. Dec. 4, 2000) ).

"When there is [a conflict or an apparent conflict] between the [VE's] testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) (*citing Massachi*, 486 F.3d at 1153-54); SSR 00–4p, 2000 WL 1898704 at *4 (The ALJ has an "affirmative responsibility to ask about any possible conflict between [the VE's testimony about the requirements of a job] and information provided in the DOT."). The ALJ must first ask the "expert to explain the conflict" and " 'then determine whether

the vocational expert's explanation for the conflict is reasonable' before relying on the expert's testimony to reach a disability determination." *Zavalin,* 778 F.3d at 846 (*quoting Massachi*, 486 F.3d at 1153-54); SSR 00–4p, 2000 WL 1898704 at *2 ("When there is an apparent unresolved conflict between VE ... evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE ... evidence to support a determination or decision about whether the claimant is disabled.").

In order to trigger the ALJ's duty to inquire, the conflict between the VE's testimony and the DOT's job description must be "obvious or apparent." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). "This means that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Id*.

Since "the requirement for an ALJ to ask follow up questions is [necessarily] fact-dependent," *Guiterrez,* 844 F.3d at 808, "the more obscure the job, the less likely common experience will dictate the result," and the more incumbent it is on the ALJ to inquire. *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017).

 "Where the ALJ fails to obtain an explanation for and resolve an apparent conflict—even where the VE did not identify the conflict—the ALJ errs." *Thompson v. Colvin*, No. ED CV 13-1851-SP, 2015 WL 1476001, at *3 (C.D. Cal. Mar. 31, 2015) (citing cases); *see also Massachi*, 486 F.3d at 1153-54 (reversible error where the ALJ failed to ask the VE "whether her testimony conflicted with the [DOT], and if so, whether there was a reasonable explanation for the conflict."); *Zavalin*, 778 F.3d at 847-848 (reversible error where the ALJ "failed to recognize" a conflict between the claimant's limitation to simple, routine tasks and the demands of the Level 3 reasoning jobs); *Lamear*, 865 F.3d at 1206 (reversible error where the ALJ failed to inquire about the apparent conflict between the claimant's left-hand limitations and the VE's testimony).

B.  Silver Wrapper Position.

Plaintiff argues that his RFC precludes him from inserting two small objects into the other, which in turn would preclude him from performing the component of the silver

wrapper position that entails inserting silverware into plastic bags. [Doc. No. 15-1 at 4-5.] Defendant argues that the vocational expert ("VE") specifically testified that she accounted for the hypothetical individual's inability to insert one small object into another by eroding the job base for the silver wrapper position. [Doc. No. 16-1 at 6.]

Specifically, the VE testified as follows:

> Q  All right. That's very helpful. Okay. I'd like you to assume a hypothetical individual of Mr. Rodriguez's age, education, and work experience who has no exertional limitations, but the individual cannot drive, must avoid even moderate exposure to hazards such as moving machinery and unprotected heights. Starting just with that, are there any jobs that the – I don't really need any medium jobs. But we'll stick with light. Are there any light jobs that individual could perform?
> A  Light jobs.
> Q  Just give me a couple examples.
> A  Probably SVP 2.
> Q  That's fine.
> A  Yes. And that would be silver wrapper, 318.687-018, SVP 2, light. National, 28,000. And another one would be garment sorter, 222.687-014, SVP 2, light, and there would be 35,000.
> Q  All right. I'm going to add a couple limitations. In addition, the individual is limited to work that's indoors and is limited – well, let me back up a minute. Those jobs you mentioned, are those indoor jobs?
> A  Yes.
> Q  All right. All right. If in addition to these limitations, the hypothetical individual lacked the depth perception – lacked depth perception so he or she could not engage in such tasks as holding two small objects, one in each hand and connecting them or inserting one of them inside the other. With that additional limitation, could that person still perform either of the jobs you identified?
> A  Yes.
> Q  With both of them?
> A  Yes.
> Q  Would there be any erosion in the numbers?
> A  I eroded it.
> Q  That's already been eroded?
> A  Yes.
> Q  Okay. If in addition, the hypothetical individual were limited to close-up work and also – I'll leave it at that. If the individual were limited to close-up work, could that person still perform those two jobs?

7

```
         A    Yes.
         Q    And actually I suppose I should ask you and when I say close-
up work, can you tell me what you understood that to mean?  I think that's
got a technical meaning, but I'm not sure what it is, so what would you say
that means?
         A    To me, that means that he would have it in front of him.
         Q    Okay.  So –
         A    In front of the – like the garment sorter would be right in front.
The silver wrapper is right in front of his eyes.
         Q    So no more than two feet, let's say?
         A    Two feet maybe.
         Q    Okay.  Do either of those jobs require any reading?
         A    No.
         Q    All right.  If in addition to all these limitations that I've stated –
in the words, not being able to read, close-up work, the depth perception, no
driving, indoors, all this together, it sounds like so far putting all this
together, the person could do those two jobs you identified –
         A    Correct.
         Q    -- in your opinion.  All right.  If in addition to this, because of
pain or other issues, the person let's say lacked sufficient concentration so
that he or she would be off task for an hour during the workday in addition
to regular breaks.  Could that person perform those or any other jobs?
         A    No.
```
(AR 95-98.)

The DOT definition for a silver wrapper is as follows:

> Spreads silverware on absorbent cloth to remove moisture.  Wraps individual place settings in napkins or inserts them with prescribed accessory condiments in plastic bag and closes bag with electric sealer.  May immerse silverware in cleaning solution to remove soap stains before wrapping.  May place tarnished and bent eating utensils aside.

DOT 318.687-018 (2016).

In her testimony, the VE assumes that Plaintiff cannot "insert [individual place settings] with prescribed accessory condiments in plastic bag."  The VE then says she accounts for this by "eroding" the job base.  However there is no explanation given by the VE as to how she arrives at the "eroded" number.  In addition it is unclear how someone who cannot perform one of the listed skills for

8

the position will qualify for any jobs, much less an "eroded" number. While ALJs are allowed to rely on the opinions of the VE, they are also obligated to make reasonable inquiry into any potential conflicts with the DOT. *Lamear*, 865 F.3d at 1206. This is especially true with an "obscure" job, such as a silver wrapper. *Id.* at 1205. Here, the ALJ made no attempt to clarify this issue, as he merely accepted the VE's conclusory testimony.

In addition, the DOT describes the requirements for each listed occupation, including the necessary General Educational Development ("GED") levels; that is, "aspects of education (formal and informal) ... required of the worker for satisfactory job performance." DOT, App. C, 1991 WL 688702 (4th ed.1991). The GED levels include the reasoning ability required to perform the job, ranging from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most). *See id*.

The GED for silver wrappers states in pertinent part as follows:

> Language: Level 1 – Reading: Recognize meaning of 2,500 (two-or-three syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.

DOT 3.18.687-018 (2016).

In other words, according to the DOT, a person is required to have a Level 1 GED in Language in order to satisfactorily perform the job of silver wrapper. *Id.* Yet the VE testified that this position did not require any reading. (AR 97.) When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency. *Massachi v. Astrue,* 486 F.3d 1149, 1153–54 (9th Cir.2007). The ALJ must ask the expert to explain the conflict and "then determine whether the vocational expert's explanation for the conflict is reasonable" before relying on the expert's testimony to reach a disability determination. *Id.*; see also Social Security Ruling 00–4P, 2000 WL 1898704, at *2 (Dec. 4, 2000). Here, the ALJ did not clarify this conflict, as he

9

19cv805-CAB-KSC

never discussed the specific requirements of the job with the VE, and merely relied on the VE's conclusory assertion that there were no conflicts with the DOT.[1]

C. Garment Sorter Position.

The same holds true with regard to the job of garment sorter, which is defined by the DOT as follows:

> Sorts finished garments, such as shirts, dresses, and pajamas, according to lot and size numbers recorded on tags and labels attached to garments. May fold and package garments in boxes and bags. May iron garments prior to folding [PRESSER, HAND (any industry)]. May be designated according to garment sorted as Shirt Sorter (garment).

DOT 222.687-014 (2016).

The GED for garment sorter states in pertinent part:

> Language: Level 1 – Reading: Recognize meaning of 2,500 (two-or-three syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.

DOT 222.687-014 (2016).

Again, there appears to be a conflict between the DOT, which requires a Level 1 in Language in order to satisfactorily perform the job of garment sorter, and the VE's testimony that reading is not required. Moreover, as Plaintiff points out, it is unclear how a person can "sort … garments . . . according to lot and size numbers recorded on tags and labels attached to garments" if the person is unable to read. None of this was clarified by the ALJ, who merely relied on the VE's general conclusion that there were no conflicts with the DOT.

## CONCLUSION

The record establishes a conflict between Plaintiff's limitations and the DOT requirements of the silver wrapper and garment sorter positions. Given this conflict, it fell upon the ALJ "to make the requisite factual findings to support his

---

[1] At the beginning of her testimony, the ALJ simply asked the VE, "If your testimony is inconsistent with the DOT, will you tell me whether or not I ask?" The VE responded "Yes." (AR 95.)

conclusion." *Pinto v. Massanari,* 249 f.3d 840, 844 (9th Cir. 2001)(citations omitted). The ALJ failed to do so and the error was not harmless. For these reasons, Plaintiff's motion for summary judgment is **GRANTED**, Defendant's motion for summary judgment is **DENIED**, and the matter is **REMANDED** to the Social Security Administration for further proceedings. The Clerk of the Court shall **CLOSE** this case.

     **IT IS SO ORDERED**.

Dated: December 23, 2019

                                               Hon. Cathy Ann Bencivengo
                                               United States District Judge